## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

NINA VIVIANI,                          )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )
                                       )        Case No. CIV-22-00090-PRW
COFFEY & ASSOCIATES, INC., and CY      )
COFFEY,                                )
                                       )
                    Defendants.        )

### ORDER

Before the Court are Plaintiff Nina Viviani's Motion for Partial Summary Judgment (Dkt. 48) and Defendants Coffey & Associates, Inc. and Cy Coffey's Motion for Summary Judgment and Brief in Support (Dkt. 45). For the reasons given below, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part, and Defendants' Motion is likewise **GRANTED** in part and **DENIED** in part.

### *Background*

Defendant Cy Coffey is an officer and director of Defendant Coffey & Associates, Inc., an Oklahoma corporation that provides landscaping and yard services in the Oklahoma City area. Defendants employed Plaintiff for just over three years, first as a landscape foreman and then as a landscape design manager. In December 2018, Plaintiff entered into a noncompete agreement that prohibited Plaintiff from, among other things, soliciting Defendants' customers or using Defendants' customer list to start a business providing similar services. Defendants terminated Plaintiff on December 20, 2021.

1

Plaintiff filed her complaint on January 31, 2022, alleging that Defendants violated the Fair Labor Standards Act by failing to pay her overtime wages and by terminating her in retaliation for threatening to report to the Department of Labor an alleged kickback scheme. In response, Defendants brought a counterclaim for unjust enrichment based on alleged overpayments for vacation days exceeding allowed time off, as well as various other state-law counterclaims based on Plaintiff's alleged violation of the noncompete agreement. Plaintiff has moved for summary judgment on portions of her unpaid-overtime claim, and Defendants have moved for summary judgment on both Plaintiff's unpaid-overtime claim and her claim for retaliation.

## *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the factfinder.[1] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[2] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[3] A dispute is

---

[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[3] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

"genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[4]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[5] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[6] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[7] And as the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[8] since "[w]here

---

[4] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[5] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[6] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[7] *Id.* (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[8] *Liberty Lobby*, 477 U.S. at 247–48.

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[9] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[10]

When the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[11] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[12] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[13]

---

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[10] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

[11] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of re'g*, (Jan. 23, 2003).

[12] *Id.*

[13] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586).

*Discussion*

The Court will address Plaintiff's motion for partial summary judgment before turning to Defendants' motion for summary judgment.

I.   *Plaintiff's Motion for Partial Summary Judgment.*

The Fair Labor Standards Act of 1938 ("FLSA") requires employers to pay overtime to nonexempt employees when they work more than forty hours a week. But an employee is exempt, and thus not entitled to overtime compensation, if she works "in a bona fide executive, administrative, or professional capacity," or in an outside-sales position, as those terms are defined by agency regulations.[14] The parties dispute whether Plaintiff was an exempt employee and thus whether she is entitled to overtime compensation under the FLSA.

A.   *Professional-Capacity Exemption.*

An employee must meet certain requirements to fall within the "bona fide professional capacity" exemption. These requirements are that (1) the employee is "compensated on a salary or fee basis"; (2) the compensation is "at a rate of not less than $684 per week"; and (3) the employee's "primary duty is the performance of work . . . [r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" or "[r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative

---

[14] 29 U.S.C. § 213(a)(1).

endeavor."[15] The first requirement is the "salary-basis test," the second is the "salary-level test," and the third is the "duties test."[16] It is the employer's burden to prove that an employee qualifies as an exempt professional, and "because the FLSA is a remedial statute, this exemption must be narrowly construed."[17]

Plaintiff argues that Defendants cannot meet their burden of proving the exemption applies. Specifically, Plaintiff says that she was not paid on a salary basis and that her compensation was less than the required $684 per week.[18]

*1. Salary-Basis Test.*

An employee is paid on a salary basis if she "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of [her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."[19] As a general rule, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to

---

[15] 29 C.F.R. § 541.300(a).

[16] *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 143 S. Ct. 677, 678 (2023).

[17] *Dobrosmylov v. DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 58 (E.D.N.Y. 2021) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009)). *See Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1192 (10th Cir. 1999) ("In a case involving the FLSA, an employer bears the burden of proving . . . the applicability of an FLSA exemption; we must construe the exemption narrowly against the employer.").

[18] Plaintiff's motion doesn't address the duties test, as she "recognizes that there may be fact issues that would prevent a finding as a matter of law on that prong." Pl.'s Mot. (Dkt. 48), at 17 n.4.

[19] *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1188 (10th Cir. 2015).

the number of days or hours worked."[20] But an employer may deduct from an exempt employee's paycheck when she "is absent from work for *one or more full days* for personal reasons, other than sickness or disability."[21] This means that "[s]ince exempt employees are not paid by the hour, the FLSA's implementing regulations prohibit employers from docking their pay for working less than a full eight-hour day."[22] So, for example, "if an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence."[23]

In contrast to the permissible deductions described above, impermissible deductions will cause the employer to "lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis."[24] An employer's intent to *not* pay on a salary basis "turns on whether the employer has an 'actual practice of making improper deductions.'"[25] This is because the employer's "'actual practice' of improperly deducting pay vitiates the intent to pay a salary under the salary-basis test."[26] In such a case, "the exemption is lost during the time period in which the improper deductions were made."[27]

---

[20] 29 C.F.R. § 541.602(a)(1).

[21] *Id.* § 541.602(b)(1) (emphasis added).

[22] *Ellis*, 779 F.3d at 1188.

[23] 29 C.F.R. § 541.602(b)(1).

[24] *Ellis*, 779 F.3d at 1188.

[25] *Id.*

[26] *Id.* at 1189 (quoting 29 C.F.R. § 541.603(b)).

[27] *Id.*

In determining whether an employer has an "actual practice of making improper deductions," the FLSA's implementing regulations list five non-exhaustive factors for courts to consider:

> the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.[28]

Plaintiff argues that Defendants regularly made partial-day deductions to her paychecks. The alleged impermissible deductions occurred in three pay periods in 2019[29] and in five pay periods during the final two months of Plaintiff's three-year employment:[30]

- *January 6, 2019–January 12, 2019.* Plaintiff was paid $605.77 for the week, which Plaintiff says reflects a deduction of 2.5 days.

- *May 26, 2019–June 1, 2019.* Plaintiff was again paid $605.77 for the week, which Plaintiff says reflects a deduction of 2.5 days.

- *July 14, 2019–July 20, 2019.* For the third and final deduction in 2019, Plaintiff was again paid $605.77 for the week, which Plaintiff says reflects a deduction of 2.5 days.

---

[28] 29 C.F.R. § 541.603(a).

[29] Plaintiff's weekly paycheck in 2019 was supposed to be $1,009.62, which is an hourly rate of $25.24 based on a forty-hour week.

[30] Plaintiff's weekly paycheck for the relevant times in 2021 was supposed to be $1,153.85, which is an hourly rate of $28.85 based on a forty-hour week.

- *October 31, 2021–November 6, 2021.* Plaintiff alleges she missed a half day of work on October 29, 2021, and that Defendants deducted $115.40 from her paycheck for the following week.[31]

- *November 7, 2021–November 13, 2021.* Plaintiff alleges she didn't work on November 8 and then worked part of November 9. As a result, Defendants deducted $375.05 (thirteen hours total) from her paycheck.

- *November 14, 2021–November 20, 2021.* Plaintiff worked five days but argues that Defendants improperly deducted a full day from her paycheck. She also alleges that Defendants deducted an additional $148.31 because Plaintiff performed a job at a client's house "incorrectly."

- *November 28, 2021–December 4, 2021.* Plaintiff alleges that Defendants deducted 2.5 hours from her paycheck for time spent on jury duty.[32]

- *December 5, 2021–December 11, 2021.* Payment records show that Plaintiff received a paycheck for only $302.89.[33]

At least as of 2021, Defendants calculated Plaintiff's paycheck deductions based on her hourly rate.[34] And though Plaintiff's 2018 employment contract specifies that Defendants would deduct $156 per day for time off from work,[35] the evidence would support an inference that the 2019 deductions were also based on Plaintiff's hourly rate. To break this down, Plaintiff's weekly paycheck in 2019 was $1,009.62, which equates to

---

[31] This amount is based on a calculated $28.85 hourly rate multiplied by four hours. The parties do not dispute that this is the correct hourly rate for the relevant time period.

[32] Defendants contend that this 2.5-hour deduction was for personal vacation, not jury duty. Either way, it is a partial-day deduction.

[33] Plaintiff also alleges that for the week of December 12, 2021, through December 18, 2021, she was not paid her final paycheck on time and was "instead only paid after signing a 'settlement release.'" Pl.'s Mot. (Dkt. 48), at 11. But she does not otherwise allege that an improper deduction occurred during this week.

[34] *See* Pl.'s Mot. (Dkt. 48), at 9; Defs.' Resp. (Dkt. 55), at 9.

[35] Pl.'s Mot. (Dkt. 48), Ex. 7.

$25.24 per hour. If calculated using this hourly rate, a full-day deduction would have been $201.92 ($25.24 x 8 hours), or $403.84 for two days. Plaintiff seems to assume, however, that the $156-per-day deduction applied in 2019, asserting that a paycheck of $605.77—a $403.85 difference from her full paycheck of $1,009.62—reflects an impermissible two-and-a-half-day deduction (($1,009.62 – $605.77) ÷ $156 = 2.59).[36] But if calculated based on the $25.24 hourly rate, a $605.77 paycheck reflects an almost exact *two-day* deduction ($25.24 x 8 hours x 2 days = $403.84). In light of this issue, there is a genuine dispute about whether the 2019 deductions were impermissible, partial-day deductions under the FLSA.

Turning to the 2021 deductions, Defendants offer no argument as to why these deductions were permissible.[37] And although an employee's exempt status isn't lost when an employer makes "isolated or inadvertent" deductions and then "reimburses the employee[]," Defendants do not show that they reimbursed Plaintiff for these deductions.[38] Nor do the parties point to any "clearly communicated policy permitting or prohibiting improper deductions."[39] The Court thus finds that these 2021 deductions over five pay

---

[36] *See* Pl.'s Resp. (Dkt. 56), Ex. 1, at 87–88.

[37] The only exception is for the deduction based on Plaintiff "incorrectly" performing a job at a client's house. Defendants argue that Plaintiff "offered" and "agreed" that she would "bear the cost of the incorrect planting 50/50," Defs.' Resp. (Dkt. 55), Ex. 2, but Plaintiff denies ever having agreed to this deduction, Pl.'s Mot. (Dkt 48), at 10. The Court considers this a genuine dispute of material fact related to the additional $148.31 deduction.

[38] *Ellis*, 779 F.3d at 1189 (quoting 29 C.F.R. § 541.603(c)).

[39] *See* 29 C.F.R. § 541.603(a). Plaintiff cites deposition testimony from Natalie Coffey for the proposition that Defendants had a "policy" of making impermissible, partial-day deductions. *See* Dkt. 59, at 107. Indeed, Ms. Coffey states that Defendants would make partial-day deductions if Plaintiff asked for less than a full day off from work. *Id.* But

periods were impermissible under the FLSA and demonstrate that Defendants had an "actual practice of making improper deductions." Defendants are "stripped of the exemption because its 'actual practice' of improperly deducting pay vitiates the intent to pay a salary under the salary-basis test."[40]  Consequently, Defendants lose the exemption "during the time period *in which the improper deductions were made*," i.e., from October 31, 2021, through November 20, 2021, and November 28, 2021, through December 11, 2021.[41]

   2.  *Salary-Level Test.*

   Plaintiff next argues that Defendants cannot satisfy the salary-level test because "[their] own records conclusively establish that Plaintiff received less than the required

---

Plaintiff has not pointed to any evidence that a "policy permitting or prohibiting improper deductions" was ever "clearly communicated," either orally or in written form, and the only partial-day deductions that Plaintiff cites are those that occurred in the final two months of her employment.

[40] *Ellis*, 779 F.3d at 1189.

[41] *See id.* (quoting 29 C.F.R. § 541.603(b)) (emphasis added); *see also Malphurs v. Active Prod. & Design, Inc.*, No. 1:17-CV-03303-CAP, 2018 WL 6521480, at *3 (N.D. Ga. Oct. 22, 2018) ("An actual practice of making improper deductions generally satisfies the intent requirement, but the exemption is lost only during the time when the improper deductions were made."); *Hansberger v. L'Italia Rest., LLC*, No. 5:16-CV-00056, 2017 WL 3923979, at *3 (W.D. Va. Sept. 7, 2017) ("[E]ven if the facts demonstrated that [the employer] had an 'actual practice' of improper deductions, it would only lose the exemption for the week of January 23, 2016."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1133 (N.D. Cal. 2011), *abrogated on other grounds by Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) ("Under Department of Labor regulations, even if an employer incorrectly docks an exempt employee's salary, it loses the exemption only for that workweek, not for all time."). The Court finds no support for Plaintiff's argument that, based on these improper deductions, Defendants lose the exemption for the duration of her three-year employment.

guaranteed 'minimum' of $684.00."[42] To qualify as an exempt employee under the FLSA, "an employee must be compensated on a salary basis at a rate of not less than $684 per week."[43] But Plaintiff's salary-level argument targets only those weeks in which Defendants made impermissible deductions from her paycheck.[44] Because the Court has already concluded that Defendants lost the exemption for those weeks under the salary-basis test, it need not address the parties' arguments concerning salary level.

### B. *Good-Faith Defense.*

For violations of the FLSA's overtime-compensation provision, 29 U.S.C. § 216(b) provides that an employer "shall be liable to the employee or employees affected in amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." That provision "requires that liquidated damages be awarded as a matter of right"[45] unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.[46]

Plaintiff asks the Court to find that Defendants didn't act in good faith and had no reasonable grounds for believing their actions were permissible under the relevant FLSA provisions. But in a case for unpaid overtime, the good-faith defense (and any award of

---

[42] Pl.'s Mot. (Dkt. 48), at 20.

[43] 29 C.F.R. § 541.600.

[44] Pl.'s Mot. (Dkt. 48), at 11.

[45] *Lorillard v. Pons*, 434 U.S. 575, 582 n.8 (1978).

[46] 29 U.S.C. § 260.

liquidated damages) assumes there was an underlying violation of the FLSA's overtime provision[47]—i.e., a nonexempt employee worked unpaid overtime, and the employer knew or should have known about the overtime.[48] For reasons more fully explained below in relation to Defendants' motion for summary judgment, genuine issues of material fact remain as to whether Plaintiff worked more than forty hours during a week in which an exemption didn't apply. It is thus premature to decide whether Defendants may rely on the good-faith defense.

### C. Outside-Sales Exemption.

The FLSA's overtime-compensation requirement doesn't apply to "any employee employed . . . in the capacity of outside salesman."[49] An employee is "employed in the capacity of an outside salesman" when the employee's primary duty is (1) making sales or (2) "obtaining orders or contracts for services," and who "customarily and regularly" performs either of those primary duties "away from the employer's place or places of business."[50]   "[T]he test is whether the person is actually engaged in activities directed

---

[47] 29 U.S.C. § 216(b) ("Any employer who *violates the provisions of . . . section 207* of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.") (emphasis added).

[48] *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) ("An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work.").

[49] 29 U.S.C. § 213(a)(1).

[50] 29 C.F.R. § 541.500.

toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling."[51]

Again, it is Defendants' burden to prove that Plaintiff "fit[s] plainly and unmistakably within the exemption's terms."[52] They have not done so here. In response to Plaintiff's motion, Defendants provide a general narrative of Plaintiff's job duties. But their statement that "[t]he undisputed facts of this case show Plaintiff was involved in making sales" is conclusory. And they do not otherwise "cit[e] to particular parts of materials in the record" to support the proposition that their Landscape Design Manager's primary duties were in fact making sales or obtaining contracts for services away from Defendants' place of business.[53] The Court thus finds that Defendants cannot rely on the outside-sales exemption.

*D. Record Keeping.*

The FLSA requires employers to keep employee records related to "wages, hours, and other conditions and practices of employment."[54] But the extent of an employer's record-keeping obligations depends on whether the employee is exempt or nonexempt under the FLSA.[55] As explained below, a genuine issue of material fact remains as to

---

[51] *Clements v. Serco, Inc.*, 530 F.3d 1224, 1228 (10th Cir. 2008) (quoting 29 C.F.R. § 541.504(b)(2)).

[52] *Id.* at 1227.

[53] *See* Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[54] 29 U.S.C. § 211(c).

[55] *See* 29 C.F.R. § 516.3; *Gonzalez v. Sara, Inc.*, No. 4:12CV1586 CDP, 2014 WL 28662, at *3 (E.D. Mo. Jan. 2, 2014) ("The type of data required for exempt employees and non-exempt employees is different.").

whether Plaintiff was ever exempt under the FLSA's professional-capacity exemption.[56] But as already concluded, the exemption didn't apply during the weeks in which they made impermissible deductions to Plaintiff's paychecks in 2021. So Defendants were obligated to maintain certain records for Plaintiff as an overtime-eligible employee.

The FLSA "requires employers to record overtime-eligible employees' daily and weekly hours, hourly rate of pay, daily or weekly straight-time earnings and overtime pay, and total wages per pay period."[57] The parties dispute, however, whether Defendants maintained a complete record of Plaintiff's work hours and whether Plaintiff failed to submit accurate timesheets.[58] For example, while Plaintiff claims that she was required to record only her billable time and that besides her self-recorded timesheets, "no other record of her hours worked exists,"[59] Defendants respond that they also tracked Plaintiff's hours through her use of company vehicles and that Plaintiff didn't comply with her time-reporting duties.[60] The Court thus finds that there is a genuine dispute of material fact related to Defendants' compliance with the FLSA's record-keeping requirements during the weeks in which Plaintiff was eligible for overtime compensation.

---

[56] Plaintiff alleges that Defendants failed to maintain billable records for multiple time periods before March 2021. Pl.'s Mot. (Dkt. 48), at 7. But "[s]ince I cannot resolve [Plaintiff's] exempt status at this stage, I also cannot determine whether [D]efendants violated the FLSA's record-keeping requirements." *See Gonzalez*, 2014 WL 28662 at *3.

[57] *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 365 (6th Cir. 2019).

[58] *See* Pl.'s Mot. (Dkt. 48), at 5–7; Defs.' Resp. (Dkt. 55), at 4–6.

[59] Pl.'s Mot. (Dkt. 48), at

[60] Defs.' Resp. (Dkt. 55), at 4–5.

For the foregoing reasons, Plaintiff's motion for partial summary judgment is **GRANTED** in part and **DENIED** in part.

## II. Defendants' Motion for Summary Judgment.

Defendants seek summary judgment on Plaintiff's claim for unpaid wages and overtime, as well as on Plaintiff's claim for retaliation. For the reasons given below, the motion is **GRANTED** in part and **DENIED** in part.

### A. Unpaid-Overtime Claim.

Defendants argue that Plaintiff's unpaid-overtime claim fails because she didn't work uncompensated overtime, and even if she did, they didn't have actual or constructive knowledge of her overtime work. They also assert that they were not required to pay overtime because Plaintiff was properly classified as an exempt employee under the FLSA's professional-capacity exemption.

#### 1. Overtime.

Plaintiff's unpaid-overtime claim has two elements: (1) that she worked unpaid overtime and (2) that Defendants "knew or should have known of the overtime work."[61] Plaintiff need only produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[62] The burden then "shifts to the

---

[61] *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).

[62] *Courtright v. Bd. of Cnty. Comm'rs of Payne Cnty., Okla.*, No. CIV-08-230-D, 2011 WL 2181954, at *10 (W.D. Okla. June 3, 2011) ("To prevail on his claim that he is entitled to damages for unpaid overtime compensation, [the plaintiff] need only prove "that he has in fact performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence."[63]

Plaintiff has not produced evidence sufficient to create a "just and reasonable inference" that she worked overtime in any week preceding October 31, 2021. That is because Plaintiff relies solely on her own self-serving declaration and deposition testimony, which state that she "generally worked at least forty-seven (47) hours per week, but on average fifty (50) hours a week."[64] But she provides no other evidence—such as timesheets, coworker depositions or affidavits, etc.—to support this statement, which is "at best conclusory."[65] Plaintiff also asserts that Defendants knew or should have known of her regular overtime work because they "texted and called her both during and outside Plaintiff's scheduled hours" and "witnessed Plaintiff working."[66] But again, Plaintiff merely relies on her own deposition testimony, and she doesn't connect her statements with

---

[63] *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85 (10th Cir. 1983) (quoting *Anderson*, 328 U.S. at 687–88).

[64] Dkt. 49, Ex. 2, at 1; *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider 'conclusory and self-serving affidavits.'") (citation omitted).

[65] *Ellis*, 779 F.3d at 1203 (internal quotations omitted) (concluding that it would require "a huge dollop of conjecture" to find a genuine issue of material fact when the plaintiff merely "aver[red] that she worked more than her time sheets indicated" and that she "knew" she "did more work than 50 hours during [the relevant time period]"); *Ellis v. J.R.'s Country Stores, Inc.*, No. 12-CV-01916-CMA-KLM, 2013 WL 3661665, at *4 (D. Colo. July 12, 2013), *aff'd*, 779 F.3d 1184 (10th Cir. 2015) ("[The plaintiff] has provided no evidence—such as an affidavit from another manager or coworker—to substantiate her assertions of having worked more than [the defendant's] timesheets indicate.").

[66] Pl.'s Resp. (Dkt. 56), at 10. The assertion that Plaintiff's employer texted or called outside her regularly scheduled hours tells us nothing about how many hours she worked in a given week, nor does the mere claim that Defendants "witnessed Plaintiff working" indicate whether she in fact worked more than forty hours.

any evidence that she worked more than forty hours in those weeks. The Court will not credit Plaintiff's "bald assertion[s]" that she worked on average fifty hours per week,[67] especially since she provides no other corroborating evidence in addition to her self-serving declaration and deposition transcript.[68]

The only corroborating evidence Plaintiff provides is her timesheets for weeks between October 31, 2021, and December 11, 2021—the weeks in which Defendants made impermissible deductions to her paychecks. Though Plaintiff doesn't allege an approximate amount of overtime she worked during those weeks (or undertake to calculate the precise hours), the Court has reviewed the timesheets and concludes that there is a genuine issue of material fact regarding whether Plaintiff worked more than forty hours. Defendants seek to chip away at Plaintiff's timesheets, alleging that she made personal phone calls and sent non-work-related emails that brought her under the forty-hour threshold.[69] But this at best raises a genuine dispute about how Plaintiff spent her day and

---

[67] 11 *Moore's Federal Practice* § 56.41[1][c] (3d ed. 2023) ("Merely restating a pleading, submitting new pleadings, or making bald assertions in a legal memorandum, or even in an affidavit, will not enable the nonmovant to withstand a properly supported summary judgment motion.").

[68] *See, e.g.*, *Courtright*, 2011 WL 2181954, at *10 ("Upon consideration of the summary judgment record, the Court finds that [the employee] has not identified sufficient facts or evidence to support his [unpaid-overtime] claim, even when he is given the benefit of all reasonable inferences. Aside from the county clerk's records, discussed above, [the employee] relies solely on his own testimony. . . . [O]n the summary judgment record presented, the Court finds that [the employee] has failed to demonstrate facts on which a finding of accrued overtime hours could reasonably be based."); *United States v. $21,055.00 in U.S. Currency*, 778 F. Supp. 2d 1099, 1102–03 (D. Kan. 2001) ("Nor is a conclusory, self-serving affidavit by a claimant sufficient to create a genuine issue of material fact . . . without corroborating documentation.").

[69] Defs.' Mot. (Dkt. 45), at 18.

whether certain periods were compensable under the FLSA. The former question is one for the jury, not the Court.

In sum, Plaintiff's unpaid-overtime claim is limited to the weeks in which Defendants made improper deductions to her paychecks, as discussed above.

### 2. *Professional-Capacity Exemption.*

An employee is "exempt" under the FLSA if she works "in a bona fide executive, administrative, or professional capacity"[70] and is "compensated on a salary or fee basis . . . at a rate of not less than $684 per week."[71] Defendants argue that they properly classified Plaintiff as an exempt employee, relying on the FLSA's professional-capacity exemption.[72] The professional-capacity exemption is limited to individuals whose primary duties (1) "[r]equir[e] knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," or (2) whose primary duties "[r]equir[e] invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."[73] The regulations define the latter category as "creative professionals."[74]

---

[70] 29 U.S.C. § 213(a)(1).

[71] 29 C.F.R. § 541.300(a).

[72] Because the Court has already concluded that Defendants lost the exemption during the weeks in which they made impermissible deductions to Plaintiff's paychecks, and because Plaintiff's unpaid-overtime claim is now limited to those weeks, the professional-capacity exemption is relevant only for determining whether Defendants violated the FLSA's record-keeping requirements earlier in Plaintiff's employment.

[73] 29 C.F.R. § 541.300(a)(2)(i)–(ii).

[74] 29 C.F.R. § 541.302(a).

Defendants have established that, before it began making impermissible deductions in the final two months of Plaintiff's employment, there is no genuine dispute that Plaintiff's weekly pay exceeded the statutorily required minimum of $684 per week.[75] But although Plaintiff's pay stubs show that she was typically paid a "predetermined amount" that was "not subject to reduction because of variations in quality or quantity of the work performed,"[76] she points to several weeks in 2019 in which she argues that Defendants applied impermissible, partial-day deductions to her paychecks.[77] As noted above, however, it is unclear in those weeks whether Defendants applied a $156-per-day deduction (as contemplated in Plaintiff's 2018 employment contract) or a deduction based on her hourly rate ($25.24 per hour, or $201.92 per day). This raises a genuine issue of material fact about whether Defendants satisfied the salary-basis test for those specific time periods in 2019.

There is also a genuine issue of material fact related to Plaintiff's status as an exempt creative professional. For Plaintiff to be an exempt creative professional, Defendants must show that her primary duties consisted of "the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor as opposed to routine mental, manual, mechanical or physical work."[78] Such recognized fields

---

[75] As discussed above, because Defendants lost the exemption for the weeks in which they made impermissible deductions in October through December 2021, the Court's salary-level conclusion is confined to Plaintiff's employment preceding those weeks.

[76] 29 C.F.R. § 541.602(a).

[77] Pl.'s Resp. (Dkt. 56), at 5.

[78] 29 C.F.R. § 541.302(a).

include, for example, "music, writing, acting and the graphic arts."[79] And as for "invention, imagination, originality or talent," the regulations recognize that "[t]he duties of employees vary widely," such that "[d]etermination of exempt creative professional status . . . must be made on a case-by-case basis."[80] In short, a court must distinguish "work requiring invention, imagination, originality or talent" from "work that primarily depends on intelligence, diligence and accuracy."[81]

According to Defendants, Plaintiff's job duties place her squarely within the creative-professional exemption. They claim that, as the Landscape Design Manager, her primary job duties were to design landscape projects for customers, "relying on her own creativity, talent, and experience" and "taking into consideration the customer's preferences and aesthetic considerations."[82] In support, Defendants point to Plaintiff's deposition testimony in which she explains that she created a custom, original design for each customer.[83] Plaintiff responds, however, that she "depend[ed] primarily on her intelligence, diligence, and willing [sic] to adapt other individuals [sic] designs to the specific landscaping needs of her clients and the Oklahoma climate."[84] Rather than creating

---

[79] *Id.* § 541.302(b).

[80] *Id.* § 541.302(c).

[81] *Id.* §§ 541.302(a), (c).

[82] Defs.' Mot. (Dkt. 45), at 15.

[83] *Id.* at 6.

[84] Pl.'s Resp. (Dkt. 56), at 23.

original designs, Plaintiff says that she merely "search[ed] the internet for landscaping ideas to implement for Defendants' clients."[85]

Whether Plaintiff's primary job duties fall within the creative-professional exemption is a "fact-intensive inquiry,"[86] and the answer depends on the level of "invention, imagination, originality or talent" required to perform those duties.[87]  In light of the parties' conflicting narratives and the evidence in their briefs, the Court concludes that there is a genuine issue of material fact that precludes summary judgment on this issue.

   *3. Damages.*

Defendants also argue that "Plaintiff was fully compensated" and that she "cannot prove damages" related to her unpaid-overtime claim.[88] This is because, Defendants say, "Plaintiff was overpaid under [their] policy and kept this overpayment."[89] But Defendants fail to support their argument by pointing to any evidence in the record. The Court thus denies summary judgment on damages.

   *B. Retaliation Claim.*

In addition to Plaintiff's unpaid-overtime claim, Defendants seek summary judgment on Plaintiff's claim for retaliation. FLSA retaliation claims follow the shifting

---

[85] *Id.* at 24.

[86] *Dobrosmylov*, 532 F. Supp. 3d at 59.

[87] 29 C.F.R. § 541.302(a). *See Dobrosmylov*, 532 F. Supp. 3d at 61 ("[I]t is not the employee's general field that determines the employee's status—what matters is what this particular employee's primary duties *actually were*.") (internal quotations and citation omitted).

[88] Defs.' Mot. (Dkt. 45), at 19.

[89] *Id.*

burden-of-proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[90] Under that scheme, a plaintiff must first establish a prima facie case of retaliation.[91] To establish a prima facie case of retaliation under the FLSA, a plaintiff must show (1) that she "engaged in activity protected by the FLSA"; (2) that she "suffered adverse action by the employer subsequent to or contemporaneous with such employee activity"; and (3) that "a causal connection existed between the employee's activity and the employer's adverse action."[92]

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for the adverse action."[93] The defendant "need not prove the absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason."[94] If the defendant articulates such a reason, "the burden then shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual."[95]

It is undisputed that Plaintiff "engaged in activity protected by the FLSA" when she reported to Defendants an alleged illegal kickback scheme and that she subsequently

---

[90] *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997).

[91] *Id.*

[92] *Id.*

[93] *Id.* at 1395.

[94] *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339, 343 (10th Cir. 1982) (internal quotations and citation omitted).

[95] *Conner*, 121 F.3d at 1394 (internal quotations and citation omitted).

"suffered adverse action" (her termination). The parties' dispute thus boils down to causation. A causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[96] And "[u]nless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation."[97] An employee's "discharge is unlawful [under the FLSA] only if it would not have occurred *but for* the [employer's] retaliatory intent."[98]

Plaintiff has carried her burden to establish a prima facie case of retaliation. As to causation, Defendants assert that Plaintiff's "proximity argument fails" because they had "already determined to fire Plaintiff" before she reported alleged illegal kickbacks. But this assertion is conclusory, and they point only to a self-serving affidavit in support.[99] It is undisputed that Plaintiff's termination occurred within the same month that she reported to Defendants alleged illegal kickbacks.[100] This "temporal proximity" is sufficient to "justify

---

[96] *Id.* at 1395.

[97] *Id.*

[98] *Id.* at 1399.

[99] Defs.' Mot. (Dkt. 45), at 10. *See Garrett*, 305 F.3d at 1213 ("We do not consider 'conclusory and self-serving affidavits.'") (citation omitted).

[100] Plaintiff does not dispute Defendants' assertion that she reported the alleged illegal kickbacks on December 10, 2021, and Defendant's exhibits show that she was terminated on December 20, 2021. *See* Defs.' Mot. (Dkt. 45), Ex. 10, at 3.

an inference of retaliatory motive."[101] The burden thus shifts to Defendants to provide a "legitimate, nondiscriminatory reason" for terminating Plaintiff.[102]

Defendants' proffered reasons meet this burden. These reasons include Plaintiff allegedly (1) soliciting employment from a customer, (2) exceeding her paid-time-off allotment, and (3) failing to follow-up with a disgruntled customer who refused to pay a $6,000 bill. In support, Defendants have produced an Order of Decision from the Oklahoma Employment Security Commission indicating that Plaintiff was terminated for her own misconduct.[103] In light of these explanations and related exhibits, Plaintiff "stipulate[s] that Defendants have produced evidence to satisfy the second prong" of the *McDonnell Douglas* framework requiring a legitimate, nondiscriminatory reason for her termination.[104] Because Defendants have carried their burden, "the presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity."[105] Plaintiff must therefore "produce evidence that [her] discharge was in retaliation for [her] protected FLSA activity, either through the use of direct evidence or by showing that [Defendants'] proffered non-retaliatory reasons for terminating [her] were pretextual."[106]

---

[101] *See Conner*, 121 F.3d at 1395.

[102] *Id.* at 1396.

[103] Defs.' Mot. (Dkt. 45), Ex. 10, at 3.

[104] Pl.'s Resp. (Dkt. 56), at 29.

[105] *Conner*, 121 F.3d at 1396 (internal quotations and citation omitted).

[106] *Id.*

Plaintiff has pointed to no direct evidence that Defendants terminated her because she reported an alleged illegal kickback scheme. Instead, she again relies on the inference created by the close temporal proximity of her protected activity and termination. This temporal proximity, says Plaintiff, is enough to show that Defendants' proffered reasons were pretextual. Though Plaintiff may use this same evidence at both the prima-facie stage and in showing that Defendants' reasons were pretextual,[107] temporal proximity is not necessarily sufficient, and any inference must be considered in light of all the facts of the case.[108] Yet considering the evidence in a light most favorable to Plaintiff as the non-moving party,[109] the Court concludes that the temporal proximity is sufficient to create a genuine dispute of material fact on this issue. Plaintiff will have the ultimate burden of persuasion at trial to show that Defendants' documented reasons were in fact pretextual.[110]

---

[107] *See id.* at 1397 ("This is not to say that evidence introduced as part of the prima facie case cannot also be used at the pretext stage of the analysis."); *see also Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 n.10 (1981) ("Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.").

[108] *Conner*, 121 F.3d at 1397–98 ("[The plaintiff] argues that even if rebuttal evidence is needed in the ordinary *McDonnell Douglas* case, . . . a showing of temporal proximity between protected activity and adverse employment action is always sufficient to survive summary judgment. We disagree both with the breadth of this argument and the factual predicate as applied to this case. . . . Each case turns on its facts . . . .").

[109] *Saleh v. Ray*, 107 F. App'x 865, 867 (10th Cir. 2004) ("We view the evidence and draw any inferences in the light most favorable to the party opposing summary judgment." (citing *Liberty Lobby, Inc.*, 477 U.S. at 255)).

[110] *Burrus*, 683 F.2d at 343 ("The overall burden of persuasion remains on the plaintiff.").

*Conclusion*

For the reasons given above, Plaintiff's Motion (Dkt. 48) is **GRANTED** in part and

**DENIED** in part, and Defendants' Motion (Dkt. 45) is likewise **GRANTED** in part and

**DENIED** in part.

**IT IS SO ORDERED** this 12th day of May 2023.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE